In the Matter of DANIEL CANTOR, Doing Business as HA-VEN MANOR HEALTH RELATED FACILITY, Petitioner, v DAVID AXELROD, as Commissioner of Health of the State of New York, et al., Respondents.

Third Department, July 14, 1983

### APPEARANCES OF COUNSEL

*Fink, Weinberger, Fredman, Berman & Lowell (Irwin R. Karassik* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Alan W. Rubenstein* and *William J. Kogan* of counsel), for respondents.

### OPINION OF THE COURT

MAIN, J.

Petitioner presently operates the Haven Manor Health Related Facility in Far Rockaway, New York. In 1969, he contracted with one David Taub to purchase the land upon which the facility is located for the sum of $235,000 and thereafter applied for and received approval to own and operate a health related facility on the property. Subsequently, on March 16, 1971, he assigned his contract of sale

with Taub to one Arthur Simensky for the sum of $500,000, and in a rider to the contract petitioner agreed to permit Simensky to use his name as an incorporator or a stockholder and to remain as such until the facility was completed. On this same date, petitioner and Simensky agreed to form a partnership based upon petitioner's approval to operate and Simensky's experience as a builder to construct such a facility, and pursuant to this latter agreement petitioner was required to exercise one of two options when a certificate of occupancy was obtained or by January 15, 1974, whichever occurred sooner. He could either withdraw as a partner and enter into a lease with the partnership on terms and conditions set forth in a separate contemporaneous memorandum, or contribute $100,000 to the partnership and sell a one-third interest in the operation of the facility to another of the partners, Norman Simens, for the sum of $5,000. The agreement further provided that the option was to be exercised by serving a notice in writing on Simensky's attorney. Pursuant to the related memorandum, also dated March 16, 1971, if petitioner exercised the first option, the lease would be for a period of 21 years with an annual rental of $1,800 per bed, and it would be assignable by the lessee with the lessor's consent and would not include furniture or movable equipment. Thereafter, on December 1, 1972, there was signed by petitioner Simensky and four others an expanded partnership agreement, which listed petitioner as agreeing to contribute 16⅔% of the partnership capital and stated that it could not be amended except in writing signed by all the parties. On December 13, 1972, a business certificate for partners including petitioner's name was filed as part of a building loan agreement and mortgage closing on that date.

With these circumstances prevailing on January 19, 1974, petitioner notified Simensky's attorney in writing that he was exercising his option to withdraw as a partner and enter into a lease pursuant to the March 16, 1971 memorandum. Approximately one month later, on February 19, 1974, petitioner and the partnership entered into a lease of the real property in accordance with the terms previously established in the March 16, 1971 memoran-

dum. Also on that date, they entered into a second lease for movable equipment at an annual rental of $200 per bed. Although both of these leases were initially considered by the Department of Health to be arm's length transactions for the purpose of determining petitioner's Medicaid reimbursement rate, following a departmental audit it was concluded that they should be treated as nonarm's length transactions for that purpose. Upon petitioner's appeal of this change, an administrative law judge likewise concluded that the leases should be given nonarm's length treatment, and an order to that effect was later issued by respondents on December 10, 1981.

The instant CPLR article 78 proceeding ensued, and we hold that the challenged order must be annulled insofar as it accorded nonarm's length treatment to the real property lease. In so ruling, we rely upon the consistent interpretation of the pertinent regulations which requires that a transaction be treated as nonarm's length when the parties are related at the time of the transaction or prior thereto and that a transaction be considered arm's length when the parties' relationship results from the transaction (see, e.g., *Hospital Affiliates Int. v Schweiker,* 543 F Supp 1380). The obvious purpose of the regulations is to prevent self-dealing and contrived relationships between related parties (*Northwest Community Hosp. v Califano,* 442 F Supp 949).

Here, the record is barren of any contention or evidence that petitioner had ever dealt with Simensky or any of the members of the later expanded partnership prior to March 16, 1971, the date upon which the lease terms for the real property were set between the parties. Accordingly, no valid basis has been presented to support respondents' order that the real property lease should be considered a nonarm's length transaction. With regard to the movable equipment lease, however, it is clear from the dealings between the parties, as set forth above, that the parties had been related in business prior to the time when the terms of that lease were established on February 19, 1974. Such being the case, the nonarm's length treatment of that lease should be sustained (see *Matter of Demisay v Axelrod,* 87 AD2d 667, mot for lv to app den 57 NY2d 602).

We need reach no other issue.

The determination should be modified, on the law and the facts, by annulling so much thereof as accorded non-arm's length treatment to the real property lease, and, as so modified, confirmed, without costs.

KANE, J. P., MIKOLL, YESAWICH, JR., and LEVINE, JJ., concur.

Determination modified, on the law and the facts, by annulling so much thereof as accorded nonarm's length treatment to the real property lease, and, as so modified, confirmed, without costs.